UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

JOHNNY PIEDRA,

          Petitioner,

   -against-

THOMAS LAVALLEY, Superintendent of
Clinton Correctional Facility, and THE
ATTORNEY GENERAL OF THE STATE OF
NEW YORK,

          Respondent.

------------------------------------------------------------X

DECISION AND ORDER
12-cv-02711 (WFK)

**WILLIAM F. KUNTZ, II, United States District Judge:**

Petitioner Johnny Piedra seeks a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his February 1, 2010 state conviction. At his jury trial, Piedra was convicted on one count of Criminal Sexual Act in the First Degree, one count of Sexual Abuse in the Second Degree, two counts of Endangering the Welfare of a Child, and two counts of Sexual Abuse in the First Degree. Piedra was sentenced to fourteen years imprisonment. He then unsuccessfully appealed his conviction on February 2, 2010 to the Appellate Division, Second Department, and was denied leave to appeal to the Court of Appeals on November 29, 2011. Piedra now seeks habeas relief on grounds that: 1) the trial court allowed improper testimony from the prosecution's expert witness, thereby depriving him of the right to fair trial; 2) the trial court improperly restricted his cross-examination of one of the abuse victims, in violation of the Due Process clause and his constitutional right to a fair trial; and 3), the trial court gave an instruction that undermined his right to an impartial jury. For the reasons below, Piedra's petition for the writ of habeas corpus is denied.

# BACKGROUND

## A. Factual Background

From 1998 or 1999 to 2004, Petitioner Piedra and Hicelda Diaz were in a relationship together. Dkt. 4, Respondent's Affidavit and Memorandum of Law in Opposition to Petition for a Writ of Habeas Corpus ("Opp.") at 9.[1] Diaz had six children from a prior relationship, including two girls who were eleven and ten years of age in late 2003 and early 2004 (hereinafter referred to as "Victim 1" and "Victim 2"). *Id.* at 8. Piedra lived in Diaz's apartment on and off and had his own key to access it. *Id.* at 9.

The acts giving rise to Piedra's conviction began in 2004. *Id.* at 9-10. During one afternoon that year, Piedra called Victim 1 into her mother's bedroom, undid Victim 1's pants, and touched her vagina with his hand. *Id.* at 10. On another occasion in 2004, Piedra placed his penis in Victim 1's mouth while he thought that she was asleep. *Id.* On yet a further occasion, Piedra sat on Victim 1's bed, touched her buttocks, asked her if she was a virgin, and then proceeded to take off his pants, put on a condom, and place his penis in her vagina. *Id.* Piedra told Victim 1 not to call out or tell anyone or he would hurt her mother. *Id.* at 11.

In addition to abusing Victim 1, Piedra touched Victim 2's vagina on more than five occasions and put his hands in her pants on more than one occasion. *Id.* These instances occurred when petitioner was telling the children a story or when Victim 2 was watching television. *Id.*

In late March 2004, Victim 2 and Victim 1 spoke to each other about Piedra, and subsequently informed their mother that Piedra was "being inappropriate" with them. *Id.*

---

[1] These facts correspond with those recounted in the Petition, Dkt. 1, and the Court incorporates all transcript citations included therein.

Neither victim gave their mother specific details. *Id.* Diaz spoke to Piedra and told him to stay away from her daughters, and their relationship eventually ended in June 2004. *Id.*

By 2007, Victim 1 was seeing a counselor, had problems at school and with her mother, had overdosed on pills, run away from home, and been taken to a psychiatric hospital. *Id.* at 12. In July 2007, Diaz made copies of Victim 1's journal and recognized Piedra's name in the journal along with other "disturb[ing]" content. *Id.* Diaz also contacted Victim 1's counselor, with whom Victim 1 had consulted. *Id.* Victim 1 was angry to hear that her mother had read her private materials, and subsequently burned all of her journals. *Id.* at n.7. Following Diaz's discovery of the journal, however, both victims spoke to the police about Piedra's actions. *Id.* at 12.

### B. The Trial

Piedra was criminally charged for his abuse of Victims 1 and 2, and his case proceeded to jury trial in Queens County Supreme Court. At trial, Victim 1, Victim 2, and their mother testified. *See* Dkt. 1, Petition for Writ of Habeas Corpus ("Petition") at 8-13. The People disclosed records from Victim 1's journal indicating that one day while Victim 1 was walking home, a fellow student pulled her into an alley and subjected her to unwanted sexual contact. Opp. at 36.

The People sought to preclude defense counsel from cross-examining Victim 1 on the classmate abuse incident, citing the Rape Shield Law (N.Y. Crim. Pen. L. § 60.42) and arguing that the incident was different from Piedra's abuse; that Victim 1 had not intended to report the incident so there was no motive to fabricate it; and that the allegation had no probative value. Opp. at 36. Defense counsel cited *People v. Hunter*, 11 N.Y.3d 1 (2008) and argued that he should be permitted to cross-examine Victim 1 about the purported "fabrications of false

statements" and "fantasy stories she is making up against my client and has made up in the past against this other person." *Id.* The trial court precluded defense counsel from cross-examining Victim 1 on the journal entry, citing its discretion under the statute and finding that the incident was not reported and that no exception in the Rape Shield Law permitted such questioning. *Id.* at 36-37.

The People also called Dr. Don Lewittes, a clinical and forensic psychologist and qualified expert in intra-familial Rape Trauma Syndrome. Petition at 7; Opp. at 12. Dr. Lewittes did not treat either victim, but he gave testimony on the effects of Paxil (a drug that Victim 1 had been prescribed) and on the behavior of sex trauma victims. Opp. at 12–13. Dr. Lewittes explained that children who have been sexually abused often do not recall the dates of the abuse, may fail to report the abuse, and may become angry. *Id.* at 13. He also explained that false allegations and conspiracies of rape are rare. *Id.*

The defense called Brisiada Piedra, Petitioner's former wife, and Johnny Piedra himself as witnesses. Petition at 7. During his testimony, Piedra denied that he physically touched either victim in a sexual manner. *Id.* at 16. After Piedra's testimony and before the jury deliberated, the court gave an instruction to the jury that Piedra was "an interested witness, interested in the outcome of the trial." *Id.* at 34-35.

At the conclusion of the trial, Piedra was convicted of one count of Criminal Sexual Act in the First Degree, one count of Sexual Abuse in the Second Degree, two counts of Endangering the Welfare of a Child, and two counts of Sexual Abuse in the First Degree. Opp. at 2. On February 1, 2010, the Honorable Kenneth C. Holder sentenced Piedra to concurrent prison terms of fourteen years for the criminal sexual act conviction, seven years for each count of first-degree sexual abuse, and one year for each count of child endangerment and sexual abuse. *Id.* at 3.

—4—

### C. Subsequent Procedural History

In January 2011, Piedra filed a direct appeal with the Appellate Division, Second Department. *Id.* at 3. Piedra argued that: 1) the court erred in allowing Dr. Lewittes to testify about intra-family rape trauma; 2) the court erred by failing to allow Piedra to cross-examine Victim 1 about the alleged abuse; 3) the court failed to give a missing witness charge with respect to Victim 1's counselor; 4) the court's interested witness charge was erroneous and deprived him of a fair trial; and 5) the sentence was harsh and excessive.

On April 23, 2011, a unanimous Appellate Division affirmed Piedra's conviction in its entirety. *See People v. Piedra*, 87 A.D.3d 706 (2d Dep't 2011). The Appellate Division found that the trial court did not err in allowing Dr. Lewittes to testify about intra-family rape trauma syndrome because the expert spoke about victims in general and never opined that that the defendant committed the crimes, and that the testimony was properly admitted to explain behavior that jurors might find unusual. *Id.* at 706. Further, the trial court did not err by prohibiting the defendant from questioning Victim 1 about the alleged abuse by her classmate, because the circumstances of the assault did not "suggest a pattern casting substantial doubt on the validity of the charges made by the victim in this instance or were such as otherwise to indicate a significant relation to such charges." *Id.* There was also no indication that the complainant ever reported the incident to anyone else or confirmed that it occurred. *Id.*

The Appellate Division went on to find that Piedra did not preserve his objection to the missing witness charge, and that "in any event, [the argument was] without merit." *Id.* Similarly, the interested witness charge was unpreserved, and in any case, the charge was "not unbalanced" and "contained no language stating that the defendant had a motive to lie or deep

personal interest in the case, and nothing in the charge assumed or suggested that he was guilty or shifted the burden of proof." *Id.* at 707 (citations omitted). The Appellate Division concluded by finding that Piedra's sentence was not excessive. *Id.*

Piedra sought leave from the New York Court of Appeals to appeal the Appellate Division's decision, but was denied leave on November 29, 2011. *People v. Piedra*, 17 N.Y.3d 955 (2011). Piedra filed the immediate habeas petition with this Court on May 29, 2012.

## ANALYSIS

### A. Legal Standard

A petitioner seeking habeas corpus relief pursuant to 28 U.S.C. § 2254 must show that he is in custody "in violation of the Constitution or laws or treaties of the United States." § 2254(a). To do so, the petitioner must demonstrate that a federal issue is presented because "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."). Further, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") permits a federal court to issue habeas corpus relief to a claim that was previously adjudicated on the merits only if the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d); *see Penry v. Johnson*, 532 U.S. 782, 792 (2001) ("A state court decision will be contrary to our clearly established precedent if the state court either applies

a rule that contradicts the governing law set forth in our cases, or confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.") (internal quotations omitted).

Moreover, a petitioner may not seek relief in a federal habeas court if he has defaulted in state court, which occurs if a petitioner has failed to exhaust state remedies or the court to which petitioner would be required to present his claims to meet the exhaustion requirement would now find the claims procedurally barred. *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991) (superseded by statute on other grounds, 28 U.S.C. § 2254(b)(2)). To exhaust state remedies, a petitioner must present his constitutional claims to the highest state court having jurisdiction over them. *See Daye v. Attorney Gen. of New York*, 696 F.2d 186, 191 (2d Cir. 1982).

If a petitioner has defaulted on a claim pursuant to an independent and adequate state procedural rule, he may not obtain relief from a federal habeas court unless he can demonstrate "cause for the default and actual prejudice as result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. Federal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, "even where the state court has also ruled in the alternative on the merits of the federal claim." *Glenn v. Bartlett*, 98 F.3d 721, 724 (2d Cir. 1996). "[A] state court need not fear reaching the merits of a federal claim in an *alternative* holding." *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989); *compare Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 810 (2000) ("[W]hen a state court uses language such as "[t]he defendant's remaining contentions are either unpreserved for appellate review or without merit," the validity of the claim is preserved and is subject to federal review.").

## B. The Testimony of Dr. Lewittes

Petitioner claims that the trial court wrongly admitted the testimony of Dr. Lewittes, a forensic psychologist who explained the "delayed outcry" by the victims. Petition at 20. Petitioner argues that 1) this testimony "sought to establish a causal link between the [victims'] suffering and the alleged abuse by Petitioner"; 2) the prosecution failed to lay a proper foundation for the testimony because the prosecution did not establish whether the victim's subsequent behavior was caused by other factors; 3) the prosecution had not proven that the victims delayed their outcry; and 4) the testimony improperly bolstered the victims' testimony. *Id.* at 20-21. These arguments are unavailing.

As a preliminary matter, Piedra waived this claim by failing to present it as a federal constitutional claim to the highest state court having jurisdiction over it. *See Jones v. Vacco*, 126 F.3d 408, 413 (2d Cir. 1997) ("the basic requirement remains that the nature or presentation of the claim must have been likely to alert the court to the claim's federal nature") (internal quotations omitted). A petitioner may present the constitutional nature of his claim by relying on cases employing constitutional analysis, asserting the claim in particular terms that call to mind a specific constitutional right, or if the allegation fits within a pattern of facts "well within the mainstream of constitutional litigation." *Daye*, 696 F.2d at 194. Here, however, Piedra did not previously cast his claim in federal constitutional terms in state court or alert the state courts to the federal nature of his claim. Piedra now summarily states in his petition that "his claims are incontrovertibly federal" because the "prejudicial and irrelevant expert testimony" led to a "denial of his fundamental right to fair trial." Petition at 19. This vague *post hoc* attempt is insufficient, and on these grounds alone, this Court can and does find that federal habeas relief is unjustified.

Moreover, even if Piedra were attempting to argue his claim as a federal constitutional error, his argument would have no merit. Federal habeas corpus relief does not lie for errors of state law. *Estelle*, 502 U.S. at 67 (discussing the admission of evidence on state law evidentiary grounds); *Alvarez v. Scully*, 833 F. Supp. 1000, 1005 (S.D.N.Y. 1993) (Lowe, J.) ("Discretionary state court evidentiary rulings normally do not rise to a constitutional level so as to be cognizable in a federal habeas corpus proceeding absent a showing that the challenged rulings violated a specific constitutional right."). Accordingly, Piedra must elevate his claim to constitutional dimensions by demonstrating that the evidentiary error was "so pervasive as to have denied him a fundamentally fair trial." *Collins v. Scully*, 755 F.2d 16, 18 (2d Cir. 1985). This test requires that an admitted piece of evidence be "sufficiently material to provide the basis for conviction or to remove reasonable doubt that would have existed on the record without it." *Id.* at 19 (holding that the evidence must have been "crucial, critical, highly significant").

Piedra has not met and cannot meet these requirements. As the state court appropriately found, there was no evidentiary error to begin with. Courts regularly admit expert evidence such as Dr. Lewittes' on victims' experience with rape trauma syndrome. *See, e.g., George v. Edwards*, 01-CV-6481, 2003 WL 22964391, at *4 (E.D.N.Y. Sept. 4, 2003) (Weinstein, J.) ("The admission of expert testimony concerning rape trauma syndrome has been deemed proper, in appropriate circumstances, under New York State law."); *People v. Taylor*, 75 N.Y.2d 277, 289 (1990) (recognizing that the "introduction of expert testimony describing rape trauma syndrome may under certain circumstances assist a lay jury in deciding issues in a rape trial"). Here, as the Second Department correctly noted, Dr. Lewittes "spoke about victims in general and never opined that the defendant committed the crimes, that the victims were sexually abused, or that the victims' specific actions and behavior were consistent with abuse." *Piedra*, 87

A.D.3d at 706. Rather, Dr. Lewittes' testimony relied on rape trauma syndrome theories to explain behavior of victims that "might appear unusual or that jurors may not be expected to understand." *Id.*; *see George*, 2003 WL 22964391, at *4 (because "the expert testimony was presented to educate the jurors about a common but seemingly puzzling reaction (delay in reporting) ... [a]dmission of this testimony was probative and not an abuse of the trial court's discretion."). Dr. Lewittes' testimony was proper, and Petitioner's claims that the testimony commented on causation, had insufficient foundation, and improperly bolstered the testimony of the victims simply have no basis in the record.[2]

Because no evidentiary error occurred in the first place, the Court certainly cannot find that the error rose to the level of constitutional error necessary for habeas corpus relief, nor can it find that the trial court's ruling denied Petitioner of a fundamentally fair trial. *See Alfini v. Lordi*, 245 F. Supp. 2d 493, 499–500 (E.D.N.Y. 2003) (Spatt, J.) (denying habeas petition based on erroneously admitted evidence and noting that "a petitioner bears a heavy burden of establishing that h[is] constitutional rights were deprived"). Petitioner's request for habeas relief based on the testimony of Dr. Lewittes is denied.

### C. Cross-Examination of Victim 1

Piedra's second ground for habeas relief is that the trial court erred by precluding Piedra's counsel from cross-examining Victim 1 about another instance of sexual abuse. Petition at 26. Piedra argues that his rights under the Fifth, Sixth, and Fourteenth Amendments were violated because "(1) the evidence sought was not the kind that the rape shield statute was intended to exclude, and (2) the complainant had already opened the door to such cross-

---

[2] Petitioner also states that there was no delayed outcry on which Dr. Lewittes could testify, but the record demonstrates that the victims did not inform their mother of the specific sexual abuse by Piedra until the mother confronted Victim 1 about her journal. Petition at 11; Opp. at 30.

examination by disclosing the incident herself." *Id.* There is zero evidence in the record supporting Piedra's second point[3]—that Victim 1 initially disclosed such evidence in the trial herself—so the only substantive issue is whether the rape shield law should have excluded this type of information.

As was the case in the Section B, *supra*, Piedra is precluded from bringing this habeas claim because he did not raise the claim as a federal constitutional issue in state court, and therefore cannot have exhausted it. *See* Opp. at 33-35; *Piedra*, 87 A.D.3d at 706. Further, Piedra's claim is a state evidentiary issue, and one that was correctly decided in the first instance. Piedra argues that the evidence regarding the other alleged assault on Victim 1 should have been admitted so that defense counsel could "explor[e] the possibility that [Victim 1's] depression and emotional trauma were the result of the classmate's abuse rather than actions attributed to the Defendant." Petition at 28. Piedra states that this point "may well have served to limit or exclude the testimony of the psychologist who attributed [Victim 1's] trauma to the Defendant." *Id.* This argument for the relevance and admissibility of the evidence is inadequate. As addressed in Section B, *supra*, the expert witness psychologist did *not* attribute Victim 1's trauma to the Defendant, but rather testified generally on rape victims' reactions to rape. Accordingly, there was no meaningful link between the classmate's act of abuse and the question of Piedra's guilt, and the trial court acted well within its discretion to exclude the evidence under New York's rape shield law (N.Y. C.P.L. § 60.42).[4]

---

[3] Indeed, the Court is troubled by Petitioner's willingness to make the blatantly incorrect statement that the Victim "began discussing the incident voluntarily" once she "took the stand." Petition at 31.

[4] New York's rape shield law provides that: "Evidence of a victim's sexual conduct shall not be admissible in a prosecution for an offense or an attempt to commit an offense defined in article one hundred thirty of the penal law unless such evidence:

Moreover, even if there were an error in the trial court's refusal to allow Piedra to cross-examine Victim 1 on the other abuse incident, the error was harmless. The two victims in this case provided specific, compelling evidence of abuse at the hands of Piedra, and the Court does not find that cross-examination on Victim 1's separate abuse incident would have cast doubt on Piedra's guilt. Any error would therefore be deemed harmless. *See Brecht v. Abrahmson*, 507 U.S. 619, 638 (1993); *Celleri v. Marshall*, 07-CV-4114, 2009 WL 1269754, at *13 (E.D.N.Y. May 6, 2009) (Bianco, J.) (denying habeas petition because "even if the trial court had violated petitioner's confrontation right by restricting his cross-examination of the complainant, the error was harmless under *Brecht*").

Piedra's cited caselaw does not compel an opposite conclusion. Piedra cites *Benn v. Greiner*, 294 F Supp. 2d 354 (E.D.N.Y. 2003) (Weinstein, J.) for the proposition that "[a] pattern of unverified and unprosecuted accusations of sexual abuse by a woman who was frequently hallucinatory and delusional could have been viewed by a jury as casting substantial doubt on the validity of the charges made in the instant case . . . the error could not be deemed harmless."

---

1. proves or tends to prove specific instances of the victim's prior sexual conduct with the accused; or
2. proves or tends to prove that the victim has been convicted of an offense under section 230.00 of the penal law [i.e., offenses relating to prostitution] within three years prior to the sex offense which is the subject of the prosecution; or
3. rebuts evidence introduced by the people of the victim's failure to engage in sexual intercourse, oral sexual conduct, anal sexual conduct or sexual contact during a given period of time; or
4. rebuts evidence introduced by the people which proves or tends to prove that the accused is the cause of pregnancy or disease of the victim, or the source of semen found in the victim; or
5. is determined by the court after an offer of proof by the accused outside the hearing of the jury, or such hearing as the court may require, and a statement by the court of its findings of fact essential to its determination, to be relevant and admissible in the interests of justice."

N.Y. C.P.L. § 60.42.

Petition at 27–28. However, *Benn* was reversed on appeal in 2005, after the Second Circuit found that "the district court's [] finding that the error was not harmless was itself clearly in error." *Benn v. Greiner*, 402 F.3d 100, 105 (2d Cir. 2005) (Sotomayor, J.). Moreover, the circumstances underpinning the district court's reasoning as to the erroneous admission are inapplicable here. In *Benn*:

> [T]he [state] trial court's preclusion of the defense from asking any question concerning P.M.'s prior allegations of sexual abuse was an abuse of discretion that rises to the level of a constitutional violation. P.M. had made a series of bizarre accusations of sexual abuse by many adult male members of her family as well as by another man eight months after the incident for which petitioner was on trial. She had a history of drug use, schizophrenia, paranoia, hallucinations and delusional thinking.

294 F. Supp. 2d at 365. Here, by contrast, there is not a shred of evidence that Victim 1's single incident of abuse at the hands of her classmate was false, that it constituted part of a pattern of accusations, or that Victim 1 was delusional. Piedra's arguments are off-point and meritless, and his petition on this claim is denied. *See Cummings v. Burge*, 581 F. Supp. 2d 436, 450 (W.D.N.Y. 2008) (Larimer, J.) ("New York's appellate courts routinely uphold rulings by trial courts in which they exercise their discretion to exclude evidence of a victim's prior accusations of sexual assault, where there has been a failure by the defendant to introduce proof establishing the falsity of the prior incidents. Thus, [petitioner] has not demonstrated an error of New York state evidentiary law, much less an error of federal constitutional magnitude.").

### D. The Interested Witness Charge

Piedra argues that the trial court committed constitutional error by "overstating how his 'interest' in the case might undercut his credibility as a witness." Petition at 32. At Piedra's trial, the jury received an instruction that:

> The defendant is an interested witness. Although not required to do so, the defendant, Johnny Piedra, in this case testified on his own behalf. His testimony should be considered by you as you would the testimony of any other witness, however, a defendant

is of course an interested witness, interested in the outcome of the trial.

You may, as jurors, wish to keep such interests in mind in determining the weight and credibility to be given his testimony. You should not, however, reject the testimony of the defendant merely because of his interests.

You, as a jury, will determine the credibility of witnesses. You may wish to keep such interests in mind in determining the credibility and weight to be given to the defendant's testimony. It is your duty, as in the case of all witnesses, to accept such testimony of the defendant that you believe to be truthful and reject such testimony as you believe to be false.

Dkt. 7-6 at 717-18. According to Petitioner, this instruction "undermined the presumption of defendant's innocence because it indirectly presupposed his guilt" and "it's extremely likely this instructional error contributed to the conviction" because the "outcome of the case arguably depended upon the decision which the jury made with respect to the credibility of the defendant as opposed to that of the witnesses for the prosecution." Petition at 35.

On appeal, the Appellate Division found that Piedra's contention was "unpreserved for appellate review" and that "[i]n any event, the jury charge contained no language stating that that the defendant had a motive to lie or deep personal interest in the case, and nothing in the charge assumed or suggested that he was guilty or shifted the burden of proof . . . the charge was not unbalanced." *Piedra*, 87 A.D.3d at 707 (internal citations and quotations omitted). Piedra now acknowledges that the claim has been procedurally defaulted, but argues that "a state appellate court can revive a claim that was previously unpreserved or procedurally barred by ruling on the merits of that claim." Petition at 37. Because the Appellate Division decision gave consideration to the merits of the interested witness claim, Piedra argues, the procedural default should not bar federal review. *Id.* at 38-39.

Piedra is mistaken. "[T]he Appellate Division's explicit invocation of the procedural bar constitutes an 'independent state ground' that precludes federal habeas review . . . even though

—14—

the court spoke to the merits of [Piedra's] claim in an alternative holding[.]" *Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir. 1999) (internal citation omitted); *accord Whitley v. Ercole*, 642 F.3d 278, 286 n.8 (2d Cir. 2011) (procedural default in state court will bar habeas review "even when the state court addresses the merits in reaching an alternative holding"). Because the Appellate Division expressly invoked the procedural bar in rejecting Piedra's claim, Piedra cannot obtain habeas relief now. *See Green v. Travis*, 414 F.3d 288, 294 (2d Cir. 2005) (Sotomayor, D.J.) ("[E]ven when a state court says that a claim is 'not preserved for appellate review' but then rules 'in any event' on the merits, such a claim is procedurally defaulted.") (internal citations omitted).

Moreover, the charge did not constitute constitutional error justifying habeas relief. As one court in this district has noted, Supreme Court precedent on interested witness charges is not clearly established, and recent Second Circuit opinions have wavered on when a constitutional error is made. *See Rodriguez v. Brown*, 11-CV-1246, 2011 WL 4073748, at *4-5 (E.D.N.Y. Sept. 13, 2011) (Cogan, J.) (reviewing Second Circuit precedent and concluding that Supreme Court caselaw was not clearly established on interested witness charge). In *Herndon v. United States*, 359 F. App'x 241, 244 (2d Cir. 2010), for instance, the Second Circuit stated that because the interested witness charge did not instruct the jury that the defendant had motive to lie, it was "hard to see how the added sentence that the defendant 'had a personal interest in the case' undermined the presumption of innocence." The opinion went on to note that there was "no value . . . in stating that a defendant has a personal interest, *even if it may not be constitutional error to do so.*" *Id.* (emphasis added). In Piedra's trial, the instruction did not state that Piedra was inclined to lie or testify falsely because of his interest, and as such, § 2254(d)'s stringent standard for constitutional error is not met. *See* 28 U.S.C. § 2254(d)(1) (writ should issue if

adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."); *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (stating that under unreasonable application prong, the state court decision must be objectively unreasonable, not just incorrect or erroneous). Piedra's petition as to the interested witness charge claim is denied.

## CONCLUSION

Piedra's petition for a writ of habeas corpus is DENIED in its entirety. A certificate of appealability shall not issue. *See* 28 U.S.C. § 2253. The Clerk of the Court is directed to serve notice of entry of this Order on all parties and to close this case.

**SO ORDERED**

Dated: Brooklyn, New York
       May 30, 2014

/S/ Judge William F. Kuntz, II

HON. WILLIAM F. KUNTZ, II
United States District Judge